UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

BROOKLYN RESOURCE RECOVERY, INC,

        Plaintiff,

        v.

3TEK GLOBAL, LLC,

        Defendant.

---------------------------------------------------------------X

Case No. 1:25-cv-06948-KAM-MMH

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS**

Pursuant to the Federal Rules of Civil Procedure, Defendant 3TEK Global, LLC ("3TEK"), by their undersigned attorneys, respond and object to Plaintiff Brooklyn Resource Recovery, Inc.'s ("BRR") First Request for Admissions. Defendant reserves the right to further supplement or amend their answers to these requests pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR ADMISSIONS

1.     **REQUEST FOR ADMISSION NO. 1:** Admit that the Contract specified an "Industry Standard Allen Bradley Mobile Control platform" for the Shredder System.

    **RESPONSE:** Denied.

2.     **REQUEST FOR ADMISSION NO. 2:** Admit that. 3TEK delivered a Parker IQAN control platform instead of an Allen-Bradley.

    **RESPONSE:** Admit that BRR purchased the Parker IQAN machine control system from 3TEK under the contract dated April 30, 2024 (the "Contract"), otherwise denied.

3.     **REQUEST FOR ADMISSION NO. 3:** Admit that the Contract contemplated an electric drive arrangement for the downstream system.

    **RESPONSE:** Denied as worded.

4.      **REQUEST FOR ADMISSION NO. 4:** Admit that 3TEK delivered a hydraulic drive system instead of an electric drive.

**RESPONSE:** Denied as worded.

5.      **REQUEST FOR ADMISSION NO. 5:** Admit that the Contract specified a steel belt conveyor.

**RESPONSE:** Denied as worded.

6.      **REQUEST FOR ADMISSION NO. 6:** Admit that 3TEK delivered a rubber belt conveyor instead of a steel belt conveyor.

**RESPONSE:** Denied as worded.

7.      **REQUEST FOR ADMISSION NO. 7:** Admit that the Contract specified that the feed hopper body and wear components would be fabricated from "Hardox wear-resistant steel plate steel sections,"

**RESPONSE:** Admit that the Contract specified the Feed Hopper body would have "Hardox wear resistant steel plate steel sections," otherwise denied.

8.      **REQUEST FOR ADMISSION NO. 8:** Admit that one or more conveyors or chutes were fabricated using mild steel without Hardox or equivalent hardened wear material.

**RESPONSE:** Denied as worded.

9.      **REQUEST FOR ADMISSION NO. 9:** Admit that the Contract described the Shredder System as equipped with a "fully functional automatic feed control system designed to maximize production by analyzing machine performance inputs from multiple sources."

**RESPONSE:** Admit that the Contract specified the 3TEK System Controls would have a "Fully functional automatic feed control system designed to maximize production by analyzing machine performance inputs from multiple sources," otherwise denied.

10.    **REQUEST FOR ADMISSION NO. 10:** Admit that the Contract included a twelve-month/2,000-hour warranty on all items provided and a CAT Platinum 5-year/6,000-hour extended warranty on the C32 diesel engine.

**RESPONSE:** Admit that the Contract specified that "Warranty: warranted against defects in workmanship and materials under normal use and conditions for a period of twelve months (12) or 2,000 hours, whichever occurs first," otherwise denied.

11.    **REQUEST FOR ADMISSION NO. 11:** Admit that Bill Padula, 3TEK's Vice President of Sales, represented to BRR prior to purchase that the Bravo 6280 could process approximately 3,000 tons of scrap per month and produce approximately 15 to 20 tons per hour of ferrous output.

**RESPONSE:** Denied.

12.    **REQUEST FOR ADMISSION NO. 12:** Admit that 3TEK's marketing materials represented that Bravo 6280 could process approximately 3,000 tons of scrap per month and produce approximately 15 to 20 tons per hour of ferrous output.

**RESPONSE:** Denied.

13.    **REQUEST FOR ADMISSION NO. 13:** Admit that Bill Padula represented to BRR that the Bravo 6280 could shred whole automobiles.

**RESPONSE:** Denied.

14.    **REQUEST FOR ADMISSION NO. 14:** Admit that 3TEK's marketing materials represented that the Bravo 6280 could shred whole automobiles.

**RESPONSE:** Denied.

15. **REQUEST FOR ADMISSION NO. 15:** Admit that 3TEK did not disclose to BRR, prior to delivery, that it had substituted Parker IQAN controls for the Allen-Bradley controls referenced in the Contract.

**RESPONSE:** Admit that BRR purchased the Parker IQAN machine control system from 3TEK under the Contract, otherwise denied.

16. **REQUEST FOR ADMISSION NO. 16:** Admit that 3TEK did not disclose to BRR, prior to the sale, that the relationship between 3TEK and Riverside Engineering had ended before BRR's unit was manufactured.

**RESPONSE:** Denied.

17.    **REQUEST FOR ADMISSION NO. 17:** Admit that 3TEK employee Alan Williams traveled to BRR's Brooklyn facility in connection with the installation of the Shredder System.

**RESPONSE:** Admit.

18.    **REQUEST FOR ADMISSION NO. 18:** Admit that 3TEK employee Taylor Griffith traveled to BRR's Brooklyn facility in connection with the installation and assembly of the Shredder System.

**RESPONSE:** Admit.

19.    **REQUEST FOR ADMISSION NO. 19:** Admit that Alan Williams traveled to BRR's Brooklyn facility to conduct maintenance and repairs on the Shredder System.

**RESPONSE:** Denied as worded.

20.    **REQUEST FOR ADMISSION NO. 20:** Admit that Taylor Griffith traveled to BRR's Brooklyn facility in connection with maintenance and repair of the Shredder System.

**RESPONSE:** Denied as worded.

21.    **REQUEST FOR ADMISSION NO. 21:** Admit that the hydraulic power unit control cabinet shipped with the Shredder System was miswired, causing the system to trigger a false overheat warning in place of the filter-change indicator.

**RESPONSE:** Denied.

22.    **REQUEST FOR ADMISSION NO. 22:** Admit that 3TEK walked BRR through manually rewiring the hydraulic power unit control cabinet to correct the factory wiring error.

**RESPONSE:** Denied.

23.    **REQUEST FOR ADMISSION NO. 23:** Admit that at least one hydraulic valve installed on the Shredder System was confirmed by serial-number check to be the wrong valve for its specified application.

**RESPONSE:** Denied.

24.    **REQUEST FOR ADMISSION NO. 24:** Admit that 3TEK supplied a pin-puller valve intended for a larger machine than the Bravo 6280.

**RESPONSE:** Denied.

25.    **REQUEST FOR ADMISSION NO. 25:** Admit that the downstream system's hydraulic pump was delivered with a plastic shipping plug instead of a proper metal fitting

**RESPONSE:** Denied.

26.    **REQUEST FOR ADMISSION NO. 26:** Admit that 3TEK acknowledged the plug had been omitted and instructed BRR to procure the correct plug itself.

**RESPONSE:** Denied.

27.    **REQUEST FOR ADMISSION NO. 27:** Admit that the large sprocket on the drum magnet assembly was machined off-center, causing the chain to cycle between excessively tight and loose positions as the magnet rotated.

**RESPONSE:** Denied.

28.    **REQUEST FOR ADMISSION NO. 28:** Admit that 3TEK replaced the water control center on the Shredder System.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system under the warranty in the Contract, otherwise denied.

29.    **REQUEST FOR ADMISSION NO. 29:** Admit that 3TEK replaced the motor control center (MCC) on the Shredder System.

6

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, otherwise denied.

30. **REQUEST FOR ADMISSION NO. 30:** Admit that 3TEK replaced the downstream valve control cabinet (VCC) on the Shredder System.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, otherwise denied.

31. **REQUEST FOR ADMISSION NO. 31:** Admit that shipping a replacement VCC via UPS tracking number 1ZX48F210109218438 on or about June 3, 2025.

**RESPONSE:** Denied.

32. **REQUEST FOR ADMISSION NO. 32:** Admit that 3TEK replaced multiple P-series and J-series wiring harnesses on the Shredder System.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, as well as the necessary wiring harnesses, otherwise denied.

33. **REQUEST FOR ADMISSION NO. 33:** Admit that 3TEK refused to replace the wiring harness that interfaces directly with the C32 engine.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, as well as the necessary wiring harnesses, otherwise denied.

34. **REQUEST FOR ADMISSION NO. 34:** Admit that 3TEK's principal response to BRR's reports of persistent control failures was to instruct BRR to "check the wiring harnesses,"

**RESPONSE:** Admit that in response to certain warning codes, one of the check list items would be to check the wiring harnesses, otherwise denied.

7

35.    **REQUEST FOR ADMISSION NO. 35:** Admit that 3TEK has agreed that major components need to be replaced after persistent control failures continued.

**RESPONSE:** Denied.

36.    **REQUEST FOR ADMISSION NO. 36:** Admit that when BRR reported a fuel-level sensor stuck in the "empty" position that prevented shredding, 3TEK instructed BRR to strike the sensor with a hammer until it reset.

**RESPONSE:** Denied.

37.    **REQUEST FOR ADMISSION NO. 37:** Admit that 3TEK or BRR, at 3TEK's recommendation, replaced or adjusted at least twenty sensors and multiple solenoids on the Shredder System.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, as well as the necessary wiring harnesses, otherwise denied.

38.    **REQUEST FOR ADMISSION NO. 38:** Admit that the Caterpillar C32 engine installed in the Shredder System suffered a catastrophic failure within less than one year of operation.

**RESPONSE:** Denied.

39.    **REQUEST FOR ADMISSION NO. 39:** Admit that on or about September 19, 2025, PLC error logs on BRR's Shredder System were deleted, wiped, or overwritten.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, as well as the necessary wiring harnesses, which will clear the logs from the prior Parker IQAN machine control system, otherwise denied.

8

40.    **REQUEST FOR ADMISSION NO. 40:** Admit that 3TEK, through its agents, deleted, wiped, or overwrote the PLC error logs on BRR's Shredder System.

**RESPONSE:** Admit that 3TEK replaced the Parker IQAN machine control system pursuant to the warranty in the Contract, as well as the necessary wiring harnesses, which will clear the logs from the prior Parker IQAN machine control system, otherwise denied.

41.    **REQUEST FOR ADMISSION NO. 41:** Admit that BRR repeatedly notified 3TEK of nonconformities with the Shredder System by phone, text, email, and service communications from approximately November 2024 through October 2025.

**RESPONSE:** Denied.

42.    **REQUEST FOR ADMISSION NO. 42:** Admit that 3TEK received BRR's written revocation of acceptance letter dated November 20, 2025.

**RESPONSE:** Admit that 3TEK received BRR's letter dated November 20, 2025, otherwise denied.

43.    **REQUEST FOR ADMISSION NO. 43:** Admit that on the same day 3TEK received BRR's revocation letter, 3TEK filed a declaratory judgment action in the 95th Judicial District Court of Dallas County, Texas.

**RESPONSE:** Admit.

9

Dated: April 20, 2026
New York, NY

Respectfully submitted,

Christopher M.W. Pioch
Christopher Pioch and Associates
1350 Ave of the Americas, Fl 2 -1075
New York, NY 10019
cpioch@piochlaw.com
Tel: (201) 956-0040

-and-

Ryan K. McComber *(PHV to be filed)*
Texas Bar No. 24041428
ryan.mccomber@figdav.com
Stoker G. Burt (PHV to be filed)
Texas Bar No. 24116151
stoker.burt@figdav.com
Figari + Davenport, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
Tel: (214) 939-2000
Fax: (214) 939-2090

*Attorneys for Defendant*

10

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 20, 2026, the foregoing was served on Plaintiff Brooklyn Resource Recovery, Inc. via electronic mail upon the following counsel of record:

Reza Yassi
Yassi Law PC
106 W 32nd St., Suite 123
New York, NY 10001
ry@yassilaw.com

Christopher M.W Pioch

11